STOULIG, Judge.
Plaintiff, Dr. John William Davis,[1] has appealed a judgment dismissing his claim for damages for the alleged negligence and/or malpractice of two physicians and other personnel of Ochsner Foundation Hospital in unnecessarily and improperly administering an electronystagmograph (hereinafter referred to as an ENG) that resulted in a permanent hearing impairment. The defendants include Dr. Daniel M. Adams; Dr. Thomas P. Gonsoulin; Ochsner Foundation Hospital; Ochsner Clinic; and Argonaut Southwest Insurance Company, liability insurer of the medical institutions.
Appellant contends the evidence preponderates to the effect that the defendant doctors improperly diagnosed his condition and consequently subject him to an unnecessary test (ENG) which was negligently and improperly performed, causing damage to his ear. In the alternative, plaintiff would have us apply the evidentiary rule of res ipsa loquitur and place the burden of proving freedom from fault on the defendants.
After reviewing the record we cannot find any factual basis for applying either theory of law because plaintiff failed to prove he did in fact suffer an impairment of hearing caused by the administering of the ENG.
*630 Undoubtedly plaintiff has a serious ear problem, but it originated long before his treatment at Ochsner. His prior medical history reflects that in 1941 his left eardrum was perforated and in 1943, while in the United States Marine Corps, he was hospitalized for bilateral deafness after having been assigned to a machine gun range. His service record also indicates the clanging of pots while working in the galley bothered him, and radio noises created a sufficient ear problem to cause his withdrawal from radio school.
The record is silent as to specific recurrences of ear problems until September 1969. At that time plaintiff consulted his family physician with complaints of nausea and dizziness; and after two brief hospitalizations in his hometown of Hammond, Louisiana, at the suggestion of his doctor, he entered Ochsner Foundation Hospital for tests on October 9, 1969. After being examined in the ear, nose and throat department by defendant physicians and on their orders, he was given an ENG the following day to establish or negate the cause of the dizziness as labyrinthitis, an inflammation of the passageways and cavities of the inner ear causing an imbalance problem. This test consists of irrigating both ears for 30 seconds with warm water (44 degrees centigrade) and then cold (30 degrees centigrade), the temperature being controlled by a thermostat preset at the factory.[2] The patient’s reactions are recorded through electrodes placed laterally to the eye and to the center of the forehead.
It is plaintiff’s contention the water injected was very hot and the irrigation with almost scalding water caused permanent ear damage. The medical records show no complaint of ear pain following the test until his readmission to Ochsner’s emergency section on October 19 with a condition diagnosed as otitis, or swimmer’s ear. All specialists agreed this was a temporary condition that leaves no residual disability or impairment.
We will not engage in a detailed discussion of the testimony because plaintiff failed to trace his complaint of loss of hearing to the administering of the ENG and in fact did not even establish that he suffered a permanent hearing impairment.
A reading of the record reflects that the plaintiff presented the testimony of two expert general practitioners and defendants tendered the testimony of six experts, including two of the defendants, in the field of otolaryngology.
In substance plaintiff’s expert witnesses —one of whom examined him on September 24, 1969, and the other on May 7, 1970 — found infection in both ears and referred him to Ochsner for treatment. It should be noted one examination predated and the other postdated the ENG. The first practitioner diagnosed plaintiff’s condition as labyrinthitis, the same finding as made by the medical staff at Ochsner. And plaintiff’s second doctor found a dramatic improvement in the condition of plaintiff’s ears within 30 days of his initial examination. Also he was unable to connect or relate plaintiff’s condition with the treatment or the ENG administered at Ochsner.
All of defendant’s experts testified without equivocation that based upon plaintiff’s prior medical history and the Ochs-ner records there was no medical basis to contraindicate the administering of the ENG. Further they stated:
1. That the ENG cannot cause deafness, permanent loss of hearing, or Men-iere’s disease;
2. That the subsequent pathological developments, not available to the ex *631 amining physicians at Ochsner, indicate that the primary cause of plaintiff’s loss of hearing was Meniere’s disease; and
3. That Meniere’s disease is an inner ear malady that cannot be adversely affected by the infection of the outer or external ear, the basis of plaintiff’s complaint.
It is their unanimous opinion that the diagnosis and treatment afforded the plaintiff did not breach or deviate in any manner from the standard of medical care in the community and that the ENG was properly performed in accordance with those standards.
Plaintiff’s failure to establish a breach of the professional obligation owed obviates a need to consider the issue of negligence and his inability to prove an injury as a result of the test renders academic any discussion of the evidentiary theory of res ipsa loquitur.
For the reasons assigned the judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant.

Affirmed.

. Dr. Davis has a doctorate in music as distinguished from a medical degree.

. The uncontradieted testimony of the doctors and the operating technician clearly estab- , lishes that they never change the thermostat and in fact did not know how to do so. The designer of the equipment stated that it was necessary to dismantle part of the machine in order to alter the thermostat.